**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BERTHA GONZALES, individually
and as parent and next friend of
Jade Gonzales, a minor,

      Plaintiff,

v.                                                 Civ No. 01-898 RLP/LFG

WILLIAM DURAN, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S (FIRST) MOTION**
**FOR PROTECTIVE ORDER**

**Introduction**

THIS MATTER is before the Court on a Motion for Protective Order [doc. 123] brought by

Plaintiff Bertha Gonzales ("Gonzales"), acting individually and as parent and next friend of minor

Jade Gonzales ("Jade"). In the request for a protective order, Gonzales asks that Jade be excused

from being deposed in this matter. Gonzales argues that Jade, who is now about 16 years old, cannot

be deposed without implicating her Fifth Amendment rights and jeopardizing her liberty interests, due

to an ongoing criminal matter in which Jade is a Defendant. Along with her motion, Gonzales filed

a Notice of Non-Appearance, notifying counsel that Jade would not appear at her deposition that was

scheduled on March 25, 2003. [Doc. 122.] Defendant Phillip Todd Heisey filed a brief in opposition

to Gonzales' motion, as did Defendants William Duran, Steve Hall, Richard Dilley, Mary Kendrick

1

and the City of Albuquerque ("City Defendants"). [Docs. 125, 130.] Plaintiff did not file a reply, and

this motion is now fully briefed. [Doc. 134.] No oral argument is necessary. After careful

consideration of the pleadings and attachments, along with the pertinent law, the Court determines

that Gonzales' Motion for Protective Order should be denied, and that Jade's deposition should

proceed.[1]

## Background

This litigation concerns the June 14, 1999 death of Sam Gonzales, husband to Bertha

Gonzales and father to Jade, and the related police investigation into the shooting. Plaintiff contends

that Jade accidentally shot her father when Jade went to get his gun for him. [Doc. 51, ¶ 7.] The

police investigated and treated it as a homicide. In the Matter of Jade G., 2001-NMCA-058 at ¶2,

130 N.M. 687, 689 (Ct. App. 2001), *cert. quashed*, 132 N.M. 484 (N.M. 2002). In the related

criminal proceedings, Jade was charged with First Degree Murder of her father.

During the course of the criminal investigation, police officers admitted to using extreme

investigative tactics. Id., 2001-NMCA-058 at ¶ 4; 130 N.M. at 689. For example, police installed

a listening device in Plaintiff's home by a ruse involving a police officer posing as a burglar and the

use of a SWAT team to apprehend the burglar. Id. Defendant Hall testified in the related criminal

proceeding that the ruse and surreptitious installation of a listening devise were used in accordance

with a state court order. Id. On August 7, 1999, at 1:25 a.m., police delivered an arrest warrant for

Jade at her house. She was 12 years old then. Id., 2001-NMCA-058 at ¶ 8, 130 N.M. at 689.

Detectives Hall and Dilley transported Jade to a detention center but before actually delivering her

---

[1]As discovery has closed in this case, the Court now re-opens discovery for the limited purpose of taking Jade's deposition. This deposition should be taken within 45 days after entry of this Order.

to the center, they interrogated her in the police vehicle for about 45 to 90 minutes.  Id.  The

detectives failed to advise Jade of her rights to an attorney and to remain silent.  In the related

criminal proceedings, detectives' handwritten notes revealed that Jade made reference to her attorney

and her mother on more than one occasion during the interrogation, although officers did not admit

that they considered Jade's statements to be an invocation of her right to counsel.  Id., 2001-NMCA-

058 at ¶ 11, 130 N.M. at 690.

A delinquency petition was filed in children's court charging Jade with the first degree murder

of her father.  Id., 2001-NMCA-058 at ¶ 1, 130 N.M. at 688.]  On May 9, 2000, the children's court

granted Jade's motion to dismiss, based on police misconduct, including the officers' failure to give

*Miranda* warnings and violations of Jade's constitutional rights.  Id.  On May 24, 2001, the New

Mexico Court of Appeals reversed the dismissal of the delinquency petition, finding that the children's

court did not have the authority to dismiss delinquency petitions based on police misconduct that

occurred before the petition was brought.  Essentially, the Court of Appeals concluded that the

children's court had overreached in dismissing the case, but it noted that the applicable section of the

children's court would have required suppression of any statements obtained from Jade during the

police interrogation.  Id., 2001-NMCA-058 at ¶ 15, 130 N.M. at 690-91.  Upon remand, the

children's court suppressed all of Jade's statements made while under the age of thirteen.  The State

appealed the suppression order, and apparently, that appeal has not yet been decided.  Thus, the

criminal proceeding is still pending more than three years after the shooting occurred.

In August 2001, Gonzales brought this civil rights complaint, alleging civil rights violations

and tort claims and requesting an award of compensatory and punitive damages against Defendants.

[Docs. 1, 51.]  Four of the individual defendants are police officers, and Heisey is an assistant district

attorney.  [Doc. 51, ¶ 3.]   The Second Amended Complaint specifically asserts that Jade was unlawfully interrogated in violation of her constitutional rights, § 1983 claims against the City, conspiracy to violate civil rights, and other tort claims.  [Doc. 51.]  Discovery closed in this case on March 28, 2003.  A jury trial is scheduled  on September 15, 2003.

The issue raised by Gonzales' Rule 26(c) motion for protective order is whether Jade, the minor Plaintiff in this civil litigation, has to give a deposition in this matter.  Gonzales argues that Jade cannot be deposed without implicating her Fifth Amendment rights and that the Court should preclude her entire deposition due to the ongoing criminal proceeding against Jade.  Gonzales further asserts that Defendants essentially have no need to depose Jade because they have already been provided with ample and detailed information about Jade.  Gonzales also explains in her motion that Plaintiff does not seek a stay of these proceedings; rather, the only relief she requests is that Defendants be precluded from deposing Jade.

## Analysis

Rule 26(c) permits the Court to enter an Order prohibiting or limiting certain types of discovery in order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense.  Rule 26(b)(1) provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  In other words, matters which are privileged may not be discovered.  Even if the rules did not contain specific language exempting privileged information from discovery, the Fifth Amendment would shield any party who reasonably believes that evidence sought to be obtained would be used against her as an accused in a criminal prosecution.  Wehling v. CBS, 608 F.2d 1084, 1086 (5th Cir. 1979), *reh'g denied*, 611 F.2d 1026

(5th Cir. 1980).  Here, Gonzales asserts that Jade may avoid her entire deposition because of her privilege against self-incrimination, in relation to the ongoing criminal charges against her.

"The Constitution's privilege against self-incrimination has ancient and venerable antecedents."  Carey v. Rudeseal, 112 F.R.D. 95, 96 (N.D. Ga. 1986).  The importance of the Fifth Amendment privilege and the need for strong protection of its use are clear.  Id. at 97.  Supreme Court precedent instructs that the Fifth Amendment privilege extends to all types of testimonial proceedings, whether criminal or civil, including pretrial discovery in civil cases.  Maness v. Meyers, 419 U.S. 449, 465, 95 S.Ct. 584, 595 (1975) (internal quotation omitted); United States v. Kordel, 397 U.S. 1, 7-8, 90 S.Ct. 763 (1970), *cert. denied*, 400 U.S. 821 (1970).

The fact that the party plaintiff, who initiated the litigation, is raising the Fifth Amendment privilege against self-incrimination does not mean that the assertion of the privilege automatically is waived or without merit.  There is case law for and against the view that civil plaintiffs are voluntary litigants who created the situation that required them to choose between silence and their lawsuit.  For example, the Fifth Circuit, has taken the position that a party does not really "voluntarily" become a plaintiff when there are no other means to protect her legal rights.  Wehling, 608 F.2d at 1089 n. 10.

However, the weight of federal authority apparently is to the contrary.  A civil plaintiff is entitled to assert a privilege against self-incrimination in resisting discovery.  However, the civil litigant is not permitted to maintain a shroud of secrecy while prosecuting an action for which she seeks an award of damages.  Jones v. B. C. Christopher & Co., 466 F. Supp. 213, 224 (D. Kan. 1979).

> It would be uneven justice to permit plaintiffs to invoke the powers of this court for the purpose of seeking redress and, at the same time, to permit plaintiffs to fend off questions, the answers to which may constitute a valid defense or materially aid the defense.

> Plaintiffs in this civil action have initiated the action and forced defendants into court.  If plaintiffs had not brought the action, they would not have been called on to testify.  Even now, plaintiffs need not testify if they discontinue the action.  They have freedom and reasonable choice of action.  They cannot use this asserted privilege as both a sword and a shield.  Defendants ought not be denied a possible defense because plaintiffs seek to invoke an alleged privilege.

Id. at 225 (*quoting* Independent Productions Corp. v. Loew's, Inc., 22 F.R.D. 266, 276-77 (S.D.N.Y. 1958)).

The fact that this discovery dispute concerns a civil plaintiff raising the Fifth Amendment privilege is not dispositive, although the Court finds it would be fundamentally unfair to permit a party to use the privilege as both a sword and a shield.  "The scales of justice would hardly remain equal . . . if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim."  Id. at 226 (*quoting* Lyons v. Johnson, 415 F.2d 540 (9th Cir. 1969), *cert. denied*, 397 U.S. 1027 (1970); *see also* General Dynamics Corp. v. Selb Manuf. Co., 481 F.2d 1204, 1213 (8th Cir. 1973)  (right to assert the privilege does not free claimant of the responsibility to respond to pre-trial discovery when information sought bears upon the claimant's own counterclaims and affirmative defenses), *cert. denied*, 414 U.S. 1162 (1974).  Thus, the Court will not permit Jade to disregard her civil discovery obligations and avoid her deposition when some of the information she will be asked concerns her claims in this civil action, as well as Defendants' defenses.  Moreover, the Court is not

convinced that Defendants already have all the information they need with respect to Jade, and therefore rejects Gonzales' assertion that Defendants have no need of further information.

Other considerations factor into the Court's decision to deny Plaintiff's motion and to require Jade's deposition.  First, Gonzales asks for far too much in requesting that Jade not be deposed at all in this civil litigation.  It is "entirely inappropriate for the privilege [of self-incrimination] to be asserted as a general matter in bar of all discovery or in bar of discovery by a particular method, as, for example, by a motion seeking to vacate a deposition notice."  Gatoil, Inc. Forest Hill State Bank, 104 F.R.D. 580, 581 (D. Md. 1985); SEC v. Thomas, 116 F.R.D. 230, 234 n. 7 (D. Utah 1987) (proper procedure is for deponent to attend deposition and answer questions she can and invoke the privilege only when her answers to questions tend to incriminate).  Similarly, blanket refusals to respond to interrogatories, based on a privilege against self-incrimination, are not acceptable. General Dynamics, 481 F.2d at 1212.  Thus, with respect to depositions, the proper method to assert such a privilege is for the deponent to appear at the deposition, truthfully answer those questions that do not implicate a privilege, and assert the privilege in response to specific questions.  Id.  The Court may then review the record to decide whether the question posed indeed called for privileged information and if the privilege was properly asserted as to each specific question.  So, too with interrogatories.  The privilege must be asserted with respect to each question, and the pertinent record presented to the Court so that it can make individualized determinations.

Plaintiff's motion also must be denied because Jude is unable, at this stage of the proceedings, to demonstrate that there is a "real and appreciable risk" of self incrimination with respect to every question that might be asked of her at the deposition.  Clearly, some aspects of her claims address areas that do not implicate the criminal prosecution, for example, factual information concerning the

7

officers' conduct, or Jade's claimed damages. A Rule 26(c) protective order should issue only where the movant demonstrates a "real and appreciable risk" of self incrimination. *See* General Dynamics 481 F.2d 1204 at 1210 (discussing privilege in terms of responses to interrogatories). The protection, therefore, is confined to instances "where the witness has a reasonable cause to apprehend danger from a direct answer." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814 (1951). Stated differently, the privilege against self-incrimination protects information that will provide "a link in the chain of evidence needed to prosecute" criminal conduct. Malloy v. Hogan, 378 U.S. 1, 11, 84 S.Ct. 1489 (1964). Thus, it is likely that the vast majority of questions posed will not raise a real and appreciable risk that Jade will implicate herself in her father's death.

Moreover, a party's "say-so" alone does not establish a hazard of self-incrimination. Hoffman, 341 U.S. at 486. Rather, it is up to the Court to decide whether a party is "confronted by substantial and 'real,' and not merely trifling or imaginary hazards of incrimination." Id.; Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697 (1968). Here, without seeing the actual questions asked of Jade at the proposed deposition, the Court has only Plaintiff's "say-so" that every question creates a hazard of self-incrimination. This is insufficient.

The Court recognizes that some of the issues in this civil litigation overlap or are related to issues in the ongoing criminal litigation. It is conceivable that some of Jade's testimony against Defendants about alleged constitutional violations in this civil matter could be used in the children's court proceedings. However, this situation does not present the obvious overlap of issues where a criminal proceeding and a civil complaint allege wrongful conduct against the same party defendants. *See* Volmar v. The New York Post Co., Inc., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding

involving the same matter).  Here, Jade is the accused in children's court proceedings but is the

accuser in this civil matter.  She is an unwilling participant in the former proceeding, but a voluntary

participant in the latter.  It is her own demand of damages in this court now that precipitates this

problem.  Thus, the Court concludes that the civil discovery process go forward.  Nonetheless, the

Court also acknowledges that it must take care not to permit civil discovery as a "back door" method

of accomplishing criminal discovery.  General Dynamics, 481 F.2d at 1213.  Assuming Jade's

deposition goes forward and that the privilege is asserted in response to certain questions, the Court

will make appropriate rulings as to whether the privilege applies or not and whether Jade properly

or improperly refused to provide evidence, thereby avoiding a back-door approach to criminal

discovery.

Plaintiff should be advised that if she fails to comply with this Order and/or chooses to remain

silent during the entire deposition, or wrongfully asserts a privilege and refuses to provide evidence,

dismissal of the civil lawsuit could result.  Mertsching v. United States, 704 F.2d 505, 507 (10th Cir.)

(no abuse of discretion in dismissing the action where Fifth Amendment right against self-

incrimination was improperly invoked), *cert. denied*, 464 U.S. 829 (1983).  *See also* Jones, 466 F.

Supp. at 226-27 (noting that dismissal for refusal to respond to discovery is a potentially proper

sanction, depending on the posture of the case).  In addition, if the case proceeds, a Fifth Amendment

privilege that is asserted without justification, may have an impact on the question of Jade's credibility

as a witness in this case.  Independent Productions Corp., 22 F.R.D. at 273.  "The Fifth Amendment

does not forbid adverse inferences against parties to civil actions when they refuse to testify."  Baxter

v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551 (1976).

## Conclusion

For the reasons stated above, Plaintiff's [First] Motion for Protective Order will be denied, and Plaintiff is ordered to produce Jade for a deposition, at a time mutually convenient to the parties, within 45 days after entry of this Order.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Protective Order is DENIED and that Jade shall appear for a deposition.

_____
Lorenzo F. Garcia
Chief United States Magistrate Judge